Filed 6/20/25  Ammari v. SCI Cal. Funeral Services CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| IMAN AMMARI, | B331408 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. |
| v. | No. 21STCV34660) |
| SCI CALIFORNIA FUNERAL SERVICES, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael E. Whitaker, Judge.  Affirmed.

Iman Ammari, in pro. per., for Plaintiff and Appellant.

Yoka Smith, Walter M. Yoka, Christopher P. Leyel, and A. Michael Sabongui for Defendant and Respondent.

_____

# INTRODUCTION

Iman Ammari and her siblings filed this action against SCI California Funeral Services, Inc. (CFS) and its employee, Frank Mendez, after a dispute arose over where to bury the siblings' mother. Iman appeals from an order of dismissal after the trial court imposed terminating sanctions against her and the other plaintiffs for misusing the discovery process. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     *Iman and Her Siblings File This Action*

In September 2021 Iman and her siblings Sami Ammari, Riham Ammari, and Razan Ammari filed this action against CFS and Mendez. In their operative first amended complaint they alleged the following:

When plaintiffs' mother died in July 2021, Sami contacted CFS to purchase a burial plot in the cemetery where plaintiffs' father and sisters were buried. Sami asked for a plot next to his father's, but Mendez told him the closest available plot was 5,000 feet away. When Sami asked about other options, Mendez said the cemetery could disinter their father's remains, modify his plot to a double-depth plot, and "double-inter" both parents in the father's plot, which "would be cheaper than a separate new burial spot." Sami agreed "to purchase the plot in that fashion for disinterment burial." Mendez instructed Sami to go to the cemetery "to fill out the necessary forms." A brother and sister of plaintiffs (who are not parties to this action) went to the cemetery to complete the forms. A salesperson named Alfredo told them "the only way to bury their mother was by purchasing a new plot

over 5,000 feet away." Because they did not know about the disinterment and double-depth option Mendez had discussed with Sami, plaintiffs' brother and sister purchased the plot 5,000 feet from their father's plot.

When Sami arrived at the cemetery for the funeral and discovered his mother would not be buried in a double-depth plot with his father, he asked to speak with the manager. The manager "agreed that Alfredo did not provide the available options properly and did not confirm the majority vote for the correct location of the burial." The manager told Sami and his siblings that they should go to the office to complete the forms for the disinterment burial and that completing the paperwork "would only take about 15 minutes." Sami and his siblings, however, waited in the office for three hours until the manager returned with a form that included "an additional clause that was not in the original form that absolved Defendants of any liability." Plaintiffs asked the cemetery to remove that clause, but the cemetery refused, "which caused the funeral to be cancelled," leaving "thousands of dollars of wasted food, preparation, and scheduling." Meanwhile, the body of plaintiffs' mother "was stowed away in a freezer" until several months later, when plaintiffs "discovered that their mother was suddenly buried by Defendants without receiving any notice." Plaintiffs asserted causes of action for fraud, misrepresentation, specific performance, negligence, and intentional and negligent infliction of emotional distress.

CFS claimed that the two non-plaintiff siblings made and paid for the burial arrangements and that, though CFS offered other burial options, plaintiffs refused to sign the form for the disinterment burial. CFS also claimed that, after the original

3

funeral date, CFS tried to get plaintiffs to choose a burial option, but plaintiffs did not respond; that plaintiffs' mother "was finally laid to rest"; and that the two non-plaintiff siblings attended the burial.

B. *The Trial Court Grants CFS's Motions To Compel Responses to Interrogatories and Requests for Production of Documents*

In June 2022 CFS served form interrogatories, special interrogatories, and requests for production of documents on each plaintiff. CFS also served deposition notices for each of the plaintiffs, setting the depositions for dates in August 2022. In July 2022 counsel for plaintiffs, Antonio Castillo, told counsel for CFS he planned to file motions to be relieved as counsel and asked for a 60-day extension to respond to discovery, which counsel for CFS granted.[1] Plaintiffs did not respond to the discovery requests or appear for their depositions.

In December 2022 CFS filed motions to compel responses to the discovery and for monetary sanctions, which the trial court granted. The court ordered each plaintiff to serve verified responses to the form interrogatories, special interrogatories, and requests for production of documents without objection and to pay CFS monetary sanctions (for Iman, $1,500) within 30 days.

---

[1] As we will discuss, though Castillo filed motions to be relieved as counsel, he and his law firm, DRE Law, remained counsel of record for all plaintiffs.

4

C.   *The Trial Court Grants CFS's Motion for Terminating Sanctions*

None of the plaintiffs complied with the court's orders to respond to discovery or to pay monetary sanctions.  In addition, none of the plaintiffs appeared for his or her scheduled deposition in March 2023, and counsel for plaintiffs never contacted counsel for CFS to request a continuance or to meet and confer.

In April 2023 CFS filed a motion for terminating sanctions, or in the alternative for issue and evidentiary sanctions, against each plaintiff.  CFS argued plaintiffs had not responded to any discovery, had ignored the court's orders compelling them to respond and to pay sanctions, and had not appeared for their depositions.  The trial court heard the motion for terminating sanctions against Iman and Sami on June 30, 2023.  An attorney from DRE Law appeared, but did not submit a written opposition.[2]  On the date of the hearing Iman filed an untimely "pro per" opposition to the motion, which the court did not consider.

The court granted CFS's motions for terminating sanctions and dismissed each plaintiff's action without prejudice.  The court ruled plaintiffs had violated court orders by failing to serve responses to CFS's interrogatories and requests for production of documents and by failing to pay monetary sanctions.  The court also ruled plaintiffs forfeited the right to oppose the motion for

---

[2]   The trial court heard CFS's motion for terminating sanctions against the other two plaintiffs on July 7, 2023.  According to the minute order, no one appeared for plaintiffs.

5

terminating sanctions by not filing a written opposition.  Iman timely appealed from the order of dismissal.[3]

## DISCUSSION

A.  *Applicable Law and Standard of Review*

A court may impose sanctions, including terminating sanctions, "against anyone engaging in conduct that is a misuse of the discovery process."  (Code Civ. Proc., § 2023.030.)  Misuse of the discovery process includes "[f]ailing to respond or to submit to an authorized method of discovery" and "[d]isobeying a court order to provide discovery."  (*Id.*, § 2023.010, subds. (d), (g); see *Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1516.)

"The trial court may order a terminating sanction for discovery abuse 'after considering the totality of the circumstances: [the] conduct of the party to determine if the actions were willful; the detriment to the propounding party; and the number of formal and informal attempts to obtain the discovery.' [Citation.]  Generally, '[a] decision to order terminating sanctions should not be made lightly.  But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.' [Citation.]  Under this standard,

---

[3]     An order of dismissal following an order granting a motion for terminating sanctions is appealable.  (See *Nickell v. Matlock* (2012) 206 Cal.App.4th 934, 940; *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 264.)  The other three plaintiffs are not parties to this appeal.

6

trial courts have properly imposed terminating sanctions when parties have willfully disobeyed one or more discovery orders." (*Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 390; see *Creed-21 v. City of Wildomar* (2017) 18 Cal.App.5th 690, 702.)

"A court has broad discretion in selecting the appropriate penalty, and we must uphold the court's determination absent an abuse of discretion." (*Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 604.) We "view the entire record in the light most favorable to the court's ruling, and draw all reasonable inferences in support of it." (*Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43, 51; see *Victor Valley Union High School Dist. v. Superior Court* (2023) 91 Cal.App.5th 1121, 1137.) "We accept the trial court's factual determinations concerning misconduct if they are supported by substantial evidence." (*Osborne*, at p. 51; see *Victor Valley Union High School Dist.*, at p. 1137.) "The appellant bears the burden on appeal of demonstrating that the trial court abused its discretion in imposing a discovery sanction." (*Rutledge v. Hewlett-Packard Co.* (2015) 238 Cal.App.4th 1164, 1191.)

B.   *The Trial Court Did Not Abuse Its Discretion in Issuing Terminating Sanctions Against Iman*

The trial court acted well within its discretion in concluding Iman's misuse of the discovery process warranted terminating sanctions. By the time the court granted the motion for terminating sanctions, the action had been pending for 22 months, and Iman, like the other three plaintiffs, had not responded to any of CFS's discovery requests and had twice failed to appear for her deposition. Iman also failed to comply with the court's orders to serve verified responses to the form

7

interrogatories, special interrogatories, and requests for production of documents and to pay CFS $1,500 in monetary sanctions.  In addition, counsel for Iman ignored attempts by counsel for CFS to meet and confer about the outstanding discovery requests.  "Repeated failure to respond to discovery and to comply with court orders compelling discovery provides ample grounds for imposition of the ultimate sanction. . . .  A party who is unwilling to, or whose counsel is incapable of, performing the obligations of litigation with diligence should not be surprised when the right to proceed is lost." (*Jerry's Shell v. Equilon Enterprises, LLC* (2005) 134 Cal.App.4th 1058, 1069; see *Moofly Productions, LLC v. Favila* (2020) 46 Cal.App.5th 1, 12 [trial court did not abuse its discretion in imposing terminating sanctions against a plaintiff who "effectively failed to participate in the discovery process" and "failed to pay the monetary sanctions the superior court ordered," leaving the defendant "unable to prepare adequately for trial"]; *Creed-21 v. City of Wildomar*, *supra*, 18 Cal.App.5th at pp. 702-703 [trial court did not abuse its discretion in imposing terminating sanctions against a party who disobeyed a court order to produce a witness for deposition and pay monetary sanctions]; *Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 297 [trial court did not abuse its discretion in imposing terminating sanctions against a plaintiff who violated discovery orders and "failed to meet and confer with opposing counsel regarding compliance with discovery requests"].)

Iman argues the trial court erred in awarding sanctions against her because she did not receive any of CFS's discovery motions, including the motion for terminating sanctions.  Iman asserts that counsel for CFS never served her with any discovery

motions and that Castillo never gave her any documents related to this action.  Iman further asserts that she never hired Castillo to be her lawyer, that she never met him, and that the "federal government put Antonio Castillo on this case as [her] lawyer to go after [her] mental health."  Iman does not cite any evidence to support these assertions.  In fact, the record shows Castillo and his law firm filed the complaint and the first amended complaint on behalf of Iman and the other three plaintiffs and appeared at the hearing on CFS's motion for terminating sanctions.  CFS properly served its discovery and discovery motions on Iman's counsel of record.  (See Rules Prof. Conduct, rule 4.2 ["a lawyer shall not communicate directly or indirectly about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter"].)

It is true that, nine months after filing the first amended complaint, Castillo filed a motion to be relieved as counsel for Iman and the other plaintiffs.  In his declaration Castillo stated that the attorney-client relationship with each plaintiff had "completely broken down irreparably and deteriorated beyond the point of repair" and that it was "unreasonably difficult and impossible to effectively represent" them.  The trial court, however, denied Castillo's motion to be relieved as counsel for Iman in September 2022 because Castillo's declaration did not comply with California Rules of Court, rule 3.1362(d)(2), which governs electronic service on the client.  Castillo refiled the motion, but the trial court denied it in January 2023 for the same reason.  Thus, Castillo was counsel of record for Iman for the entire time this action was pending in the trial court.[4]  Iman's

---

[4]    The trial court ultimately granted Castillo's motions to be relieved as counsel for the other three plaintiffs, but ruled

9

argument her lawyer was to blame for not telling her about CFS's discovery requests or responding to them fails because, in the context of discovery sanctions, """the negligence of the attorney . . . is imputed to his client and may not be offered by the latter as a basis for relief.""" (*Sauer v. Superior Court* (1987) 195 Cal.App.3d 213, 231; see *ibid.* [rejecting the argument "the court erroneously attempted to punish [the client] for the mistakes of his attorney" by imposing an issue sanction for violating a discovery order]; see also *Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898 [attorney's negligence is imputed to the client, but the "client's redress for inexcusable neglect by counsel is, of course, an action for malpractice"]; *Seacall Development, Ltd. v. Santa Monica Rent Control Bd.* (1999) 73 Cal.App.4th 201, 204-205 ["[a]s a general rule . . . the negligence of an attorney is imputed to the client"].)

Iman also complains that on February 8, 2023 she tried to file a document and speak with the trial judge, but that a judicial assistant stopped Iman because she was represented by counsel. She similarly complains the court did not give her notice of the time of the hearing on CFS's motion for terminating sanctions on June 30, 2023. On both dates, however, Iman was represented by counsel. The record shows the court moved the time of the hearing by 30 minutes and gave notice of the change telephonically and by mail to counsel of record. Although Iman contends Castillo was not (and never was) her lawyer, as discussed she cites no evidence to support that contention.

---

Castillo would remain counsel of record until he filed proof of service on his clients of an order notifying them of future proceedings. Castillo apparently never filed the proofs of service.

Finally, Iman argues in passing the trial court erred in imposing $1,500 in monetary sanctions against her because she never received "any document in the whole case." This is the same argument Iman makes regarding the trial court's order imposing terminating sanctions, and it fails for the same reasons. Ammari has not argued or shown she is unable to pay the monetary sanctions.

## DISPOSITION

The order of dismissal is affirmed. The parties are to bear their costs on appeal.

SEGAL, J.

We concur:

MARTINEZ, P. J.

FEUER, J.

11